**The below described is SIGNED.**

**Dated: March 07, 2011**

_____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | |
| Donald Wesley Dennett, | Bankruptcy Case Number 10-21685 |
| Debtor(s). | Chapter 7 |

## MEMORANDUM DECISION APPROVING CHAPTER 7 TRUSTEE'S MOTION
## TO COMPROMISE AND SETTLE CLAIM

The matter before the Court is the consideration of the Chapter 7 Trustee's Motion to Compromise and Settle Claim ("Motion to Compromise") along with the Debtor's Motion for Abandonment ("Motion for Abandonment"). The matter concerns litigation pending in the 5th District Court of Utah (the "State Court Litigation") involving a repurchase agreement for land located just outside Zions National Park in the city of

1

Springdale, Utah (the "Real Property") currently owned by the Ferbers, as Defendants and cross-claimants in the State Court Litigation while the Debtor is the Plaintiff. The Motion to Compromise and the Motion for Abandonment involve the same property and are therefore considered together. An evidentiary hearing was held on the Trustee's motion on February 17, 2011. Blaine Hoefling appeared for the Debtor and Philip G. Jones appeared as the Chapter 7 Trustee ("Trustee")[1] and Matthew Ekins appeared for the Defendants. The issue before the Court is whether the settlement of the claim for $25,000 as requested by the Trustee should be approved or whether the claim should be abandoned to the Debtor.

For the reasons stated below, the Court will grant Trustee's Motion to Compromise and deny the Motion to Abandon.

## JURISDICTION

The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L). Venue is appropriate under 28 U.S.C. § 1408. Notice of the hearing for both motions is found to be appropriate and adequate.

---

[1] Mr. Hoelfing represents the Debtor in the State Court Litigation against the Defendants.

**FACTUAL BACKGROUND**

The Debtor filed for Chapter 11 bankruptcy relief on February 17, 2010 after commencing the State Court Litigation against the Defendants.  The Debtor's schedules list $2,366,280.64 in secured claims and $1,019,773.57 in unsecured claims and no priority unsecured claims.  Schedule A lists property at 792 Park Boulevard (the Real Property here) and Roosevelt land with  values of $251,000 and $160,000 respectively.  Schedule B lists a total of $6,450 in personal property.  The Debtor's case was converted to one under Chapter 7 on September 14, 2010.  Mr. Jones was appointed as the Trustee and initially filed his own motion to abandon relating to the State Court Litigation.  This was denied without prejudice on  December 2, 2010 due to an offer by the Defendants to the Trustee to settle the underlying claim. The Trustee filed his current Motion to Compromise on December 14, 2010.  The Debtor's response to the Motion to Compromise included his own Motion to Abandon.  Two creditors, Ballard & Campbell Land Survey and Vector Engineering, filed identical statements opposing the Trustee's Motion to Compromise Trustee claiming that if the Debtor is successful in his litigation (and assuming the Real Property is repurchased and then sold), the creditors would be benefitted.

The Debtor's underlying cause of action against the Defendants goes back to 2007 when the Debtor became in arrears on his loan payments on the Real Property to a third party. The Defendants agreed to purchase the Real Property from Debtor and obtained a loan from Zions Bank for $1,775,603.29 to pay off the Debtor's creditor. The Debtor and Defendants executed documents regarding the Real Property. The agreement between the Debtor and the Defendants granted the Debtor possession of the Real Property with an 18 month repurchase right subject to monthly interest payments of $8,000.00 per month (the "Repurchase Agreement"). The Repurchase Agreement called for a 30 day notice from the Debtor before the repurchase to calculate the amount owed. The Debtor characterizes the Repurchase Agreement as a mortgage; the Defendants characterize the agreement as an absolute purchase of the Real Property to the Defendants subject to an exclusive right to repurchase held solely by the Debtor.

The underlying lawsuit between the parties arose when the Debtor attempted to exercise his rights under the Repurchase Agreement. Although two purchase price amounts were provided by the Defendants, one on July 6, 2009 in the amount of $2,209,156.14 and the other on August 5, 2009 in the amount of $2,108,712.73, the timing of the amounts is in dispute. The Debtor believes the Defendants acted in bad

faith by delaying calculation of the exact amount that in turn prevented the Debtor's funding source from being able to close due to uncertainty. The Defendants contend the Debtor failed to exercise his repurchase right after the Debtor's funding source withdrew its funds. The Defendants also contend the Debtor was already in default of the Repurchase Agreement due to missing two monthly interest payments prior to closing. When the Defendants sought to enforce their rights of possession under the Repurchase Agreement, the Debtor initiated the State Court Litigation.

The State Court ordered a $100,000 possession bond which was posted by the Defendants on February 12, 2010. The Debtor filed his Chapter 11 case on February 17, 2010 which stayed any surrender to the Defendants. On February 25, 2010, the Defendants filed a motion to dismiss the Debtor's bankruptcy case or in the alternative, motion for relief from the automatic stay. This Court granted relief from stay to the Defendants on April 29, 2010. The Defendants subsequently obtained possession of the Real Property pursuant to actions taken in State Court. Both parties have filed motions for summary judgment in the State Court which are pending at the present time.

The Trustee recommends that this Court approve his settlement with the Defendants by allowing him to settle the claim for $25,000 for the following reasons

5

which he put forth by way of his testimony which the Court finds to be credible:

(1)   There are more than 14 hotly contested claims in the State Court Litigation.

(2)   Assuming the Debtor's claims survive summary judgment, substantial funds would be required to continue litigation.

(3)   The estate has no funds to litigate the claim and no party has come forward with funds to continue the State Court Litigation.

(4)   The Trustee believes the chance of success of the claims of the Debtor to be unlikely because the Debtor failed to comply with the terms of the parties agreement, failed to tender the repurchase amount, and has used his bankruptcy case improperly.

(5)   Assuming the Real Property could be repurchased, the Trustee does not believe there to be sufficient equity in it to return a dividend to creditors because of

    (A)   This Court's prior ruling on the lack of equity.[2]

    (B)   The high costs of continuing the State Court Litigation.

    (C)   The repurchase price of the Real Property has continued to rise.

---

[2] The Court's ruling on lack of equity was determined May 17, 2010 and limited to the Defendant's motion for relief from stay.

    (D)    The continuing decline in Utah real estate values.

    (E)    The extended duration of the litigation, and

    (F)    The potential difficulty in finding a buyer at this point in time.

    (G)    Finally, the Trustee attempted to value the Real Property by viewing the Debtor's Schedules which listed it at $250,000, but assumed that was a typo and determined the Debtor really meant $2,500,000. He viewed a 2008 appraisal which valued the Real property at $2.5 million and discounted that to $2.0 million due to his investigation of falling land values and determined the value to be just under $2.0 million. He ascertained that the payoff on the underlying debt to be $2.1 million as of 2009 and that it continues to increase. In part relying on his own investigation, he also reviewed the relief from stay hearing where the Court lifted the stay upon a finding of no equity in the Real Property. He determined that it would be problematic for the Real Property to be sold as the amount of debt, plus costs of litigation would result in no equity for the Real Property. Finally, in interviewing Ken Pullmer who had been

interested in the Real Property previously, ascertained that Mr. Pullmer had neither a present interest in funding the litigation nor purchasing the property as no offer was made.

In summary, the Trustee recommends settling the claim with the Defendants under his business judgment because it is in the best interest of the creditors.

The Debtor contests the Trustee's Motion to Compromise because the Debtor believes he will prevail in the State Court Litigation and will reclaim his right to repurchase the Real Property. The Debtor believes the Real Property is worth at least $3,000,000 and claims there is a verbal offer to purchase it by a neighboring property owner for $3,000,000. No evidence was produced regarding this offer except Debtor's counsel's argument. The Debtor, in his Motion to Abandon, states that if his lawsuit against the Defendants is successful, the Trustee should fund the repurchase of the Real Property which could then be sold, and a plan of reorganization would be submitted to benefit the creditors.[3] The Debtor thus opposes the Motion to Compromise and instead seeks an abandonment of the State Court Litigation so that he can continue it.

---

[3]Debtor's Motion to Abandon was included in his Opposition to Trustee's Motion to Compromise and was not noticed or set for a hearing but which the Court elected to hear in conjunction with the Trustee's Motion to Compromise.

8

The Court conducted an evidentiary hearing on the motions on February 17, 2011 at which time the Trustee proffered his testimony which was received without objection and the parties made their argument in support of their respective positions. The Court took the matter under advisement at the conclusion of the hearing.

**ANALYSIS**

Property of the bankruptcy estate, under 11 U.S.C. § 541(a)(1),[4] includes "...all legal or equitable interests of the debtor in property as of the commencement of the case." This would include causes of action belonging to the Debtor at the time the case is commenced.[5] Rule 9019[6] allows the Trustee, with court approval after notice and hearing, to compromise or settle claims of the estate, including a cause of action a debtor has

---

[4] Unless specifically identified hereafter, all references so Section or § shall refer to sections of Title 11, United States Code.

[5] In re Stat-Tech Intern. Corp., 47 F.3d 1054 (10th Cir. 1995)(holding property of the estate includes causes of action belonging to the debtor as of the petition date); see also Simantob v. Claims Prosecutor, LLC (In re Lahijani), 325 B.R. 282, 287 (9th Cir. BAP 2005 ("Causes of action owned by the trustee are intangible items of property of the estate that may be sold."); see also Sender v. Simon, 84 F.3rd 1299 (10th Cir. 1996); In re Moore, 608 F.3d 253 (5th Cir. 2010).

[6] Fed. R. Bankr. P. 9019(a).

against a third party.[7]  Further, settlements are favored in bankruptcy.[8]  Appellate courts have held that a bankruptcy court's approval of a compromise must be affirmed unless the court's determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.[9]  Rule 9019 does not set out approval factors for a compromise, rather, the standards for consideration of compromise and settlement are left to case law.[10]  The underlying test for the bankruptcy court's approval is whether the Trustee's actions are "within the universe of reasonable actions", not whether pressing onward might produce more funds.[11]  The Court's role is to determine if compromise and settlement is in best interest of creditors.[12]  Further, the Court must apprise itself of "all facts necessary for an

---

[7] Id..  See  In re Kaiser Steel Corp., 105 B.R. 971 (D. Colo. 1989)(affirming bankruptcy court's settlement of claims with some but not all defendants); see also In re Kopexa Realty Venture Co., 213 B.R.1020, 1022 (10th Cir. BAP 1997);  In re Martin, 91 F.3d 389 (3d. Cir. 1996); In re Kaiser Steel Corp., 105 B.R. 971 (D. Colo. 1989).

[8] In re Southern Medical Arts Co., Inc., 343 B.R. 250 (10th Cir. BAP 2006); See also In re Kaiser Steep Corp., 105 B.R. 971, 978 (D. Colo. 1989).

[9] Id.

[10] Supra.

[11] In re Mailman Steam Carpet Cleaning Corp., 212 F.3d 632, 636 (1st Cir. 2000), cert denied, 531 U.S. 960, 120 S. Ct. 2661 (2000); see also Fed. R. Bankr. P. 9019, Selected Case Comment, Approval-Factors and Standards for Consideration.

[12] In re Kopexa Realty Venture Co., 213 B.R.1020, 1022 (10th Cir. BAP 1997). See also In re Martin, 91 F.3d 389 (3d. Cir. 1996); see also In re Kaiser Steel Corp., 105

intelligent and objective opinion of probabilities of ultimate success should the claim be litigated."[13]  In considering whether a settlement or compromise is in the best interest of the estate, the court must consider four prongs:

(1) The probable success of the underlying litigation on the merits,

(2) The possible difficulty in collection of a judgment,

(3) The complexity and expense of the litigation, and

(4) The interests of creditors in deference to their reasonable views.[14]

Further, the Court is not required to hold a mini-trial on the issues involved in the case being compromised.  Rather, the obligation of the court is to canvass "...the issues and see whether the settlement falls below the lowest point in the range of reasonableness."[15]

There is no doubt that the Debtor's litigation with the Defendants is part of his

---

B.R. 971 (D. Colo. 1989).

[13] Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25, 88. S. Ct. 1157 (1968).

[14] In re Kopexa Realty Venture Co., 213 B.R. 1020, 1022 (10th Cir. BAP 1997). See also In re Martin, 91 F.3d 389, 393 (3d. Cir. 1996); accord In re Healthco Int'l Inc., 136 F.3d 45, 30, 39 C.B.C.2d 939 (1st Cir. 1998); In re Jackson Brewing Co., 624 F.2d 605, 607 (5th Cir. 1980); In re Flight Transp. Corp. Sec. Litig., 730 F.2d 1129 (8th Cir. 1984), cert denied, 469 U.S. 1207, 105 S. Ct. 1169 (1985).

[15] Id. See also In re Interstate Cigar Co., 43 C.B.C.2d 111, 240 B.R. 816 (Bankr. E.D.N.Y. 1999).

11

bankruptcy estate and that it may be either sold or settled by the Trustee if this Court approves. The four factor analysis from Kopexa should be used to determine if settling the litigation is in the best interest of the creditors. Using the Kopexa standards, the Court determines that there is factual support from the evidence and finds as follows:

(1) The probable success of the underlying litigation on the merits is low because the fourteen claims are hotly contested and from just an overview of the litigation, it appears that the Debtor may have an uphill battle in convincing the State Court of the claims he has asserted. On the other hand, the Defendants appear to have the better argument. The Court is not saying one way or the other that there is a guaranteed victory for the Defendants, just that it appears they have the better argument.

(2) There is little possibility of a cash judgment that would result in any payment to the creditors because success on the merits likely means repurchase of the Real Property. Further, since a major thrust of the State Court Litigation is to allow the Debtor to repurchase the Real Property from the Defendants, it would require cash to pay off the Defendants in the millions of dollars. At the present time, the Trustee has little or no cash and no prospects in obtaining funding for the litigation or for the repurchase of the Real Property. Further, any possible repayment to creditors would would be protracted and, as stated, would first require the outlay of millions of dollars

       by the Trustee to repurchase the Real Property and substantial marketing.

(3)    The complexity and expense of the litigation is great given the fourteen contested claims and counter-claims overlaid with the converted bankruptcy case. The State Court Litigation is also likely to be protracted as summary judgment is unlikely given the dispute of material facts in the case.

(4)    The interests of creditors, giving deference to their reasonable views, strongly suggests and the Court finds that settling the litigation as opposed to continuing down an uncertain and expensive path, is in the best interest of creditors. Although two creditors have filed objections, they have not persuaded the Court that there is a viable alternative to that proposed by the Trustee. They did not appear at the hearing on the Trustee's Motion to Compromise. They appear to have faith in the Debtor, but, as stated, there are major hoops to jump through before anything would be realized by any creditor including: (a) successful litigation funded sufficiently to go through trial (and there is no war chest); (b) success on the merits in the State Court which is far from a certainty; (c) repurchase of the Real Property from the Defendants with funds that are non-existent at the present; (d) sale of the Real Property after significant marketing without a cash fund to pay for the same in a depressed real estate economy would be difficult; and (e) at any sale, the Trustee would need to pay off the Defendants and then, after

payment of any sales commission, closing costs and possibly other costs, and return the balance to creditors with allowed claims.

Accordingly, in the Court's opinion, the $25,000 bears a rational relationship to the evidence presented.  Further, the Court finds the proposed settlement is within the universe of reasonable actions by the Trustee.  Finally, the Court believes it has been apprised of all facts necessary (or at least provided a fair opportunity for all parties to present such) for an intelligent and objective opinion of probabilities of ultimate success should the claim be litigated.

Although in a perfect world, the creditors should be repaid all of their claims, there comes a point when the factors of Kopexa dictate that "a bird in the hand is worth two in the bush" and creditors will have to take less based on a realistic view of the situation. Here, $25,000 in hand is worth more than complicated, expensive and uncertain litigation and marketing the Real Property in an uncertain market for a possible higher return to creditors.  Even assuming, arguendo, that the claims are not settled through this motion, the Trustee would be responsible for litigating the claim on behalf of the estate, not the Debtor.

Alternatively, § 554(a)(b) allows a Trustee to abandon property of the estate or do so on request of a party in interest if property is "burdensome to the estate or that is of inconsequential value and benefit to the estate."  The Debtor's Motion for Abandonment gives little or no consideration to the $25,000 offered by the Defendants to settle the claim

nor recognizes the Trustee's obligations to the creditors under a Chapter 7 case. Where the claim has value of $25,000 if settled, an amount that is not inconsequential, abandonment does not meet the parameters of § 554.

This Court is aware of the 5th Circuit Court of Appeals (the "5th Circuit") case of In re Moore where that Court addressed two similar issues: (1) whether a trustee's proposed compromise of estate claims constituted a proposed sale of estate property, and (2) whether a higher offer for purchase of a claim obligated the bankruptcy court to consider an auction and § 363 sale.[16] The central issue before the 5th Circuit was precipitated by a creditor offering more for the purchase of a claim than was offered by defendants to settle the claim. In Moore, the 5th Circuit found that "The proposed compromise was a disposition of estate property" and that because an offer to purchase the claim had been presented which was higher than the offer to settle the claim, the bankruptcy court had to consider whether an auction and § 363 sale was appropriate.[17] The 5th Circuit followed the 9th Circuit BAP's ruling in In re Mickey Thompson Entm't Group, Inc. in finding that the settlement of a claim was a § 363 sale, but that imposition of formal sale procedures was not mandatory and was a matter of discretion left to the

---

[16]In re Moore, 608 F.3d 253 (5th Cir. 2010).

[17]Id. at 265.

bankruptcy courts.[18] Moore can be distinguished from the instant case, however, because unlike Moore where a creditor outbid a settling defendant to purchase the claim, here no other party has come forward to outbid the $25,000 offer by the Defendants to settle the claim. Further, if the Debtor's argument was followed, the Court would need to order an abandonment of the claim to him with the hope that if he prevails in State Court, the Trustee would repurchase the Real Property from the Defendants, and then sell it for more than the debt which exceeds $2 million which would then allow the creditors to be benefitted .

The Trustee's Motion to Compromise, on the other hand, is not inconsistent with the ruling in Moore. There, the court determined that a creditor should be allowed to outbid a settling defendant, without the formality of a § 363 sale, particularly where the creditor there was offering a 25 percent premium over an offer by the defendants to settle the claim. Finally, the Trustee here has explored the market of the Real Property and determined that there was little or no likelihood of selling it for an amount that would return funds to the unsecured creditors, assuming he could even acquire title. Thus, although Moore is not controlling in this circuit, it is instructive. Applying it in the instant case, the Trustee has tested the market and in the exercise of his business judgment, no

---

[18] Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415,422 (9th Cir. BAP 2003)(holding that settlement is a sale and that "whether to impose formal sale procedures is ultimately a matter of discretion" left to bankruptcy courts).

16

greater return would result. Further, Moore is distinguishable on the facts in that no other offer has come forward. The Trustee has persuaded the Court that no further marketing would result in any bids that would generate anything for the unsecured creditors.

## CONCLUSION

The Court's authority under Rule 9019 includes authorizing the settling of the claim as motioned by the Trustee. The Debtor, other creditors, and third parties have had ample time since the filing of the Chapter 11 petition by the debtor in February 2010 and conversion to Chapter 7 in September 2010 and notice of the current motion to either purchase or settle the claim. Where no one else has come forward with a higher offer than the Defendants to either purchase or settle the claim, the $25,000 offer to settle reasonably and fairly represents the value of the claim to the estate. Further, the Court finds no abuse of discretion by the Trustee in exercising his business judgment in proceeding with his motion and accepting the offer subject to court approval.[19] The Debtor's request to abandon the claim, without any consideration to his bankruptcy estate and creditors, must be denied because it does not meet the standard of § 554 and is not in the best interest of the creditors.[20] Therefore, as the Court finds the Trustee compliance with the tests set

---

[19] In Curlew Valley Assoc., 14 B.R. 506 (Bankr. D. Utah 1981).

[20] At least two creditors believe that the Debtor will act appropriately and return funds to them if successful, however, the lack of control and oversight for all creditors by a trustee is problematic and the Court is not persuaded that allowing the Debtor at this point to control the litigation is in the best interest of all creditors.

forth above, and particularly those on pages 12-14, and making the other findings herein, the Trustee should be authorized to accept the $25,000 offer to settle the claim by the Defendants. The Trustee's Motion to Compromise will thus be granted and the Debtor's Motion to Abandon is will be denied. The Trustee will be authorized to execute such documents as he deems necessary to effectuate the settlement consistent with this decision upon his receipt of the $25,000. A separate order accompanying this decision will be entered.

_____End of Document_____



SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below.

Donald Wesley Dennett
729 Zion Park Blvd
Springdale, UT 84767
    *Debtor*

Blaine T. Hofeling
1760 North Main, Suite 220
Cedar City, UT 84721
    *Attorney for Debtor*

Philip G. Jones
853 West Center Street
Orem UT 84057
    *Chapter 7 Trustee*

Matthew Ekins
Gallian Wilcox Welker Olson & Beckstrom
965 East 700 South Suite 305
St. George UT 84790
    *Attorney for Stewart Ferber*

United States Trustee
Ken Garff Building
405 South Main Street, Ste 300
Salt Lake City, UT 84111